UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARINA PANICHEVA and
ALEXEY BITTIR,

                Plaintiffs,

v.

Case No.: 2:24-cv-11437
Hon. Gershwin A. Drain

DEPARTMENT OF
HOMELAND SECURITY and
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL,

                Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [#19, #22]

### I. INTRODUCTION

Plaintiffs Marina Panicheva and Alexey Bittir, husband and wife, entered the United States in 2015 without being admitted or paroled, seeking political asylum. ECF No. 1, PageID.2. In 2022, Plaintiffs were denied asylum and were ordered to be removed to Russia (or in the alternative, to Ukraine for Bittir) by the Immigration Court in Detroit. Plaintiffs appealed this decision, which is still pending. *Id.* at PageID.13–14, 62. In the instant lawsuit, Plaintiffs allege a variety of claims against the Department of Homeland Security ("DHS") and the Michigan Department of

1

Attorney General ("MDAG") arising out of DHS's removal proceedings and Plaintiffs' political asylum application process. *Id.* at PageID.1–5. Plaintiffs seek various relief, such as the Court to require MDAG to issue them new identification cards and DHS to return their passports; to "[w]ithdraw the decision of the Immigration Court"; to restore judicial deadlines in their asylum case; to restore their original I-589 forms; and to recognize the crimes of "Immigration System officials." *Id.* at PageID.5–6.

DHS and MDAG filed Motions to Dismiss. *See* ECF No. 19; ECF No. 22. Both Motions are fully briefed. Upon review of the Motions, the Court finds that oral argument will not aid in their disposition. Accordingly, the Court will resolve the Motions on the parties' briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, both Motions shall be GRANTED.

## II. BACKGROUND

Plaintiff Panicheva is a Russian-born Russian citizen, and Plaintiff Bittir is a Ukrainian-born Russian citizen. ECF No. 1 at PageID.10. Plaintiffs are husband and wife and arrived in the United States from Russia in June 2015. Plaintiffs entered the United States at or near Brewster County, Texas without first being inspected and admitted or paroled at a port of entry. *Id.* at PageID.49. Subsequently, DHS personally served Plaintiffs with Notices to Appear ("NTAs") under § 212(a)(6)(A)(i) of the Immigration and Nationality Act, which alleged that Plaintiffs

2

entered the United States without being admitted or paroled at a port of entry, and began removal proceedings in El Paso, Texas against them.[1] *Id.*; ECF No. 19-3. In November 2015, Plaintiffs submitted I-589 forms—Applications for Asylum and for Withholding of Removal—to seek political asylum, protection under the Torture Convention, or otherwise to withhold removal. *Id.* at PageID.2, 50. Plaintiffs alleged that they fled Russia due to threats from local authorities after Bittir witnessed evidence tampering in the high-profile murder investigation of politician Boris Nemtsov. *Id.* at PageID.51–53.

In November 2018, Plaintiffs' immigration cases were transferred to the Immigration Court in Detroit, Michigan at Plaintiffs' request. *Id.* at PageID.49–50. At a 2020 hearing before the Immigration Court in Detroit, Plaintiffs admitted the factual allegations contained in their NTAs, and the Court sustained DHS's charges of removability. *Id.* at PageID.50. In 2022, the Immigration Court denied Plaintiffs' applications for asylum, denied their applications for withholding of removal, and denied Plaintiffs' applications for protection under the Torture Convention. *Id.* at PageID.57–62. Thus, the Immigration Court ordered Plaintiffs to be removed to Russia (or Bittir to Ukraine in the alternative) based on the charges in their NTAs. *Id.* at PageID.62. Plaintiffs appealed this decision with the Board of Immigration Appeals, which remains pending. *Id.* at PageID.13–18.

---

[1] Plaintiffs refused to sign their Notices to Appear. *See* ECF No. 19-3.

3

Plaintiffs take issue with several things that occurred during their asylum and removal proceedings in Detroit and filed the instant complaint. First, they argue that the fact that their asylum proceedings took longer than 3 years means that the Immigration Court was in violation of the Article 7(2) of the International Convention relating to the Status of Refugees. *Id.* at PageID.2. Second, they argue that the Immigration Judge falsely claimed that they were missing the I-589 forms that they submitted in 2015. *Id.* As a result, Plaintiffs stated that the Immigration Judge "illegally forced" them to fill out new I-589 forms which restarted their three-year immigration process and constituted forgery and simulation of legal process. *Id.* at PageID.3 (citing MICH. COMP. LAWS § 750.368). Plaintiffs allege that as a result, the Michigan Secretary of State now refuses to renew Plaintiffs' "federal ID[s]." *Id.* Third, Plaintiffs state that DHS employees have stolen their passports and other identification documents. *Id.* Finally, Plaintiffs allege that they were never served with Notices to Appear because they did not sign them, making the removal proceedings defective. *Id.* at PageID.4.

For relief, Plaintiffs request the Court: (1) to require MDAG to issue them "Federal ID[s] of the State of Michigan"; (2) to require DHS to return their passports; (3) to "[r]ecognize" the actions of the Immigration Court as illegal and withdraw the decision of the Immigration Court; (4) to find that Plaintiffs are entitled to asylum because the Immigration Court failed to decide their asylum cases within three years;

4

(5) to require the Immigration Court to return their original I-589 forms; and (6) require the Immigration Court to confirm in writing the existence of the original I-589 forms. *Id.* at PageID.5–6.

In lieu of answering, both DHS and MDAG filed Motions to Dismiss. ECF No. 16; ECF No. 22. DHS makes the following arguments: Plaintiffs cannot challenge the Immigration Court's decision because the Court lacks jurisdiction over such challenges under the REAL ID Act, 8 U.S.C. §1252; Plaintiffs fail to establish that the Court has mandamus jurisdiction; Plaintiffs fail to state a claim because they have not shown that DHS has waived its sovereign immunity in this matter; and Plaintiffs' claims are moot because the Immigration Court has already rendered a decision in their asylum proceedings and because the Immigration Court considered Plaintiffs' original 2015 I-589 applications when it determined whether they were entitled to asylum. *See* ECF No. 19.

Similarly, MDAG argues that Plaintiffs fail to establish that the Court may exercise mandamus jurisdiction over MDAG. Further, MDAG states that Plaintiffs' complaint fails to survive a Rule 12(b)(6) analysis because they do not allege any involvement of MDAG in their immigration proceedings, MDAG is not involved in the issuance of federal IDs, and MDAG does not have Plaintiffs' passports. *See* ECF No. 22.

5

Plaintiffs responded to both motions. In Plaintiffs' response to DHS's motion, Plaintiffs reiterate their claim that the NTAs were illegal because they were never signed. ECF No. 21, PageID.184. Plaintiffs state that they are not requesting the Court to consider their complaint "within the framework of immigration removal proceedings," but rather as a criminal violation of Michigan state law and international law. *Id.* at PageID.185–86. In response to MDAG's motion, Plaintiffs state that they reached out to MDAG for help to "bring criminals to justice" as it pertains to the alleged violations of criminal law in their immigration proceedings, but MDAG never responded or conducted any investigation. ECF No. 26, PageID.220–21. Plaintiffs also state that MDAG has illegally refused to renew their IDs. *Id.* at PageID.223–24.

Both Defendants replied to Plaintiffs' responses. In addition to reiterating its prior arguments, DHS noted that private individuals cannot compel the criminal prosecution of another person. ECF No. 23, PageID.210. MDAG also reiterates its arguments in noting that Plaintiffs' response fails to identify any cognizable legal basis upon which to hold MDAG liable. ECF No. 28.

### III. LAW & ANALYSIS

#### A. *Legal Standards for Motions to Dismiss*

A motion to dismiss for lack of subject matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). *Forest City Residential Mgmt., Inc. ex rel.*

*Plymouth Square Ltd. Dividend Housing Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014). Rule 12(b)(1) motions can be categorized as facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* (emphasis in original). In such an instance, the court takes the material allegations of the petition as true and construes them in the light most favorable to the nonmoving party. *Id.* In contrast, "[a] *factual* attack… is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* (emphasis in original). There is no presumption of truthfulness to the factual allegation, and the court is free to weigh evidence to determine its power to adjudicate the case. *Id.* "The party invoking federal jurisdiction bears the burden of establishing" the elements of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss for failure to state a claim is brought under Federal Rule of Civil Procedure 12(b)(6) and tests the sufficiency of the pleadings by asking whether the complaint states a claim upon which relief may be granted. *See Bassett v. Nat'l College Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Rule 8(a)(2) requires a plaintiff's complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard does not require "detailed factual allegations," a plaintiff's pleadings must

7

raise "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the factual allegations must "raise a right to relief above the speculative level," and must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), a court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)) (alterations added).

### B. Jurisdiction Over Removal Proceedings

Plaintiffs request that the Court withdraw the Immigration Court's decision regarding their removal, restore their original I-589 forms, and to restore their original "judicial deadlines" to thereby grant them asylum. The Court does not have jurisdiction to consider these claims or grant this relief.

The REAL ID Act amended the Immigration and Nationality Act by "significantly narrow[ing] the scope of judicial review for removal orders in immigration cases and essentially strip[ping] district courts of jurisdiction over such cases." *Benitez v. Dedvukaj*, 656 F. Supp. 2d 725, 727 (E.D. Mich. 2009). Title 8 U.S.C. § 1252 states that "a petition for review filed with an appropriate court of appeals… shall be the sole and exclusive means for judicial review of an order of

8

removal entered or issued under any provision of this chapter[.]"² 8 U.S.C. § 1252(a)(5). The "appropriate court of appeals" is "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *Id.*(b)(2). Furthermore, "no court shall have jurisdiction to hear any cause or claim by… any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders[.]" *Id.*(g); *see also Muka v. Baker*, 559 F.3d 480, 484 (6th Cir. 2009) (stating that the REAL ID Act provides "an exclusive mechanism for review of [removal] decisions via petitions for review filed in the court of appeals[.]").

Section 1252's "channeling of jurisdiction to the circuit courts applies both to direct and indirect challenges to an alien's removal order." *Benitez*, 656 F. Supp. 2d at 727. As such, courts have found that collateral attacks to removal proceedings which indirectly challenge the validity of a removal order are jurisdictionally barred in the district courts. *See id.* at 728 ("Plaintiff cannot circumvent the REAL ID Act's review provisions and express limitation of district court jurisdiction by claiming that he is pursuing in this court a due process claim that is somehow distinct from his removal order."); *Ametaj v. Dep't of Homeland Sec.*, No. 09-13417, 2009 WL 3012403, at *3 (E.D. Mich. Sept. 17, 2009) (rejecting Plaintiff's due process claim

---

² There is one exception permitting limited habeas review for summary removal proceedings under 8 U.S.C. § 1225(b)(1), which is not applicable here.

9

for lack of jurisdiction because "[t]here is simply no way for [the] Court to resolve Plaintiff's present claim without conducting a judicial review of the immigration proceedings that resulted in the denial of asylum to Plaintiff."); *Yzo v. Gonzales*, No. 07-11798, 2007 WL 1840145, at *3 (E.D. Mich. June 25, 2007) (finding that the court could not address the plaintiff's constitutional claims pertaining to his detention because the "detention is only illegal if the order of removal was erroneously entered… therefore, [the plaintiff's] true objective is, and must be, to challenge the order of removal[.]"); *Novas v. Immigr. & Customs Enf't*, 303 Fed. App'x 115, 118 (3d Cir. 2008) (finding that a due process claim is a challenge to the order of removal).

Here, Plaintiffs state that the Immigration Court used "false documents"—new I-589 forms[3] and NTAs that were not signed by Plaintiffs—in the removal proceedings, which the Plaintiffs contend is illegal because it is forgery and simulates legal process. As such, Plaintiffs request that this Court restore their original I-589 forms and "[w]ithdraw the decision of the Immigration Court" for

---

[3] Transcripts indicate that the Immigration Court did not have Plaintiffs' I-589 forms in their file at their February 20, 2019 hearing. ECF No. 1, PageID.27, 30. However, in the Immigration Court's order denying asylum and ordering Plaintiffs' removal, Plaintiffs' original I-589 forms from 2015 were exhibits, and the Immigration Court considered them in finding that Plaintiffs had satisfied the one-year deadline for bringing an application for asylum after entering the United States. *Id.* at PageID.57. Thus, even if the Court had jurisdiction to consider Plaintiffs' claims, their arguments on this point would be moot because the Immigration Court possessed and considered their original I-589 forms.

violating their rights. ECF No. 1, PageID.5. Furthermore, they ask the Court to restore the original deadlines in their case so that they may be granted asylum in accordance with international law.[4] *Id.*

Under the REAL ID Act, however, the Court plainly lacks the power to grant Plaintiffs the remedies they seek. By challenging the legality of the removal proceedings, Plaintiffs collaterally attack the validity of removal. Plaintiffs' argument that the Immigration Court violated the law during their removal proceedings "necessarily implies" that the removal proceedings and the Immigration Court's decision were defective. *Ametaj*, 2009 WL 3012403, at *3. Furthermore, by challenging the deadlines in their asylum cases, Plaintiffs desire to alter the outcome of their asylum cases. *See Yzo*, 2007 WL 1840145, at *3. As such, there is no way

---

[4] Plaintiffs seem to believe that Article 7(2) of the International Convention Relating to the Status of Refugees requires signatory countries to process asylum applications within three years, or else the applicants are to be automatically granted asylum. However, that is not what Article 7(2) requires. Rather, it states that after three years' residence, refugees enjoy exemption from legislative reciprocity. U.N. Convention Relating to the Status of Refugees, art. 7(2), July 28, 1951, 189 U.N.T.S. 137. Legislative reciprocity means that a host country gives a foreign national within its borders only the same rights and privileges that the foreign national's country gives the host country's nationals within the foreign country's borders. Article 7(2) exempts refugees from this requirement once they have been in the host country for three years; thus, refugees are entitled to the benefits that the host country confers on other foreign nationals "notwithstanding the refugee's home state's policies." Michael Castle-Miller, *The Law and Policy of Refugee Cities: Special Economic Zones for Migrants*, 21 CHAP. L. REV. 303, 325 (2018). Therefore, Article 7(2) has nothing to do with granting asylum and does not set time limits on evaluating asylum applications. Even if the Court had jurisdiction to consider Plaintiffs' claim, it would be denied for failure to state a claim.

the Court can determine the propriety of the Immigration Court's forms, procedures, and deadlines without judicially reviewing the decision to deny asylum and to remove Plaintiffs. *Id.* Such a review would violate the strict jurisdictional limits set forth in the REAL ID Act.

### C. *Mandamus Jurisdiction*

Plaintiff requests the Court to require MDAG to renew their IDs[5] and DHS to return their passports.[6] The Court does not have jurisdiction under the Mandamus Act to do so.

Title 28 U.S.C. § 1361—otherwise known as the Mandamus Act—establishes district court jurisdiction to issue a writ of mandamus to compel an officer, employee, or agency of the United States "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Notably, "[t]he existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

---

[5] There is confusion about which IDs Plaintiffs are referring to. Plaintiffs call the IDs "federal IDs," but as MDAG points out, it is not involved in issuing federal identification. ECF No. 22, PageID.197. Later, Plaintiffs state that they seek "local" IDs from MDAG—presumably state IDs. ECF No. 26, PageID.223. However, the distinction makes no difference here because Plaintiffs' claims necessarily fail for lack of mandamus jurisdiction.

[6] The Court assumes without deciding that this request is not barred by the REAL ID Act's jurisdictional limits, because the return of Plaintiffs' passports would not affect the Immigration Court's removal determination.

12

Furthermore, "[b]y its terms, the statute only applies to officers or employees of the United States and does not apply to state officials or employees." *Perry v. Kalamazoo Cnty. Prob. Officer*, No. 23-cv-12694, 2024 WL 3173610, at *2 (E.D. Mich. June 25, 2024); *Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970).

The mandamus remedy "is a drastic one, to be invoked only in extraordinary situations." *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). To determine if mandamus relief is available, the plaintiff must show that "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Id.* (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)). In addition, "[m]andamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Id.*

Here, Plaintiffs seek to compel the action of both DHS and MDAG. They ask the Court to require MDAG to issue their IDs and DHS to return their passports. However, Plaintiffs have failed to demonstrate that a writ of mandamus is an appropriate remedy in either case. As to MDAG, it is a state agency. Thus, it is out of reach of the mandamus jurisdiction of this Court. *See* 28 U.S.C. § 1361. Furthermore, Plaintiffs have not identified a single on-point law that creates a "clear

13

and indisputable" right to their ID cards or a "clear and indisputable" duty that MDAG issue their ID cards. *See Allied Chem. Corp.*, 449 U.S. at 35. Even if Plaintiffs could point to such a law, this Court would not be permitted to intrude on state sovereignty by forcing MDAG to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

As to DHS, DHS's Immigration and Customs Enforcement ("ICE") policy states that ICE officers "generally confiscate any foreign and domestic government-issued documents" upon the initiation of removal proceedings against a noncitizen. IMMIGR. AND CUSTOMS ENF'T, POLICY NO. 11311, CONFISCATION AND RETURN OF ORIGINAL DOCUMENTS (2023); ECF No. 19-2, PageID.171 (Decl. of Officer Steven Anderson).[7] However, individuals who have their documents seized may request the return of such documents prior to removal, which ICE reviews on a "case-by-case

---

[7] As an exhibit to its Motion to Dismiss, DHS provided Steven Anderson's declaration. Steven Anderson is an officer with the Enforcement and Removal Operations division of ICE and is familiar with Plaintiffs' case. He notes that it is ICE policy to confiscate foreign and domestic-issued documents of aliens subject to removal and corroborates that, upon the alien's request, ICE determines whether to return such documents on a case-by-case basis. The Court may consider this declaration, even though it is extrinsic evidence, because DHS raises a factual attack to the Court's jurisdiction based on the Mandamus Act. *Ritchie*, 15 F.3d at 598 (noting that the court may consider evidence in determining the factual existence of subject matter jurisdiction).

14

basis." IMMIGR. AND CUSTOMS ENF'T, POLICY NO. 11311; ECF No. 19-2, PageID.171.

Plaintiffs have not identified how this policy violates either a clear right to relief, or how this policy violates a duty that DHS owes to Plaintiffs. Plaintiffs cite MICH. COMP. LAWS § 750.462a as the law that DHS is allegedly violating by taking their passports. That is the definition section for the human trafficking provision of Michigan's penal code, which defines "coercion" to include "abuse of the legal system" and confiscating the passports of human trafficking victims. MICH. COMP. LAWS § 750.462a(b)(ii)–(iii). However, this statute has no relevance to the present case which pertains to asylum and removal, not human trafficking. Thus, Plaintiffs have not demonstrated that they have a right to their passports under these circumstances, nor that DHS owes them a duty to give their passports back.

Furthermore, Plaintiffs have not demonstrated that they have no other remedy available. They have not pled that they have requested their passports back through the official channels that ICE provides or that they were denied through these official channels; they simply state that DHS has "refused to respond to petitions demanding the return of passports." Officer Anderson states that upon information and belief, Plaintiffs have not made a formal request for their passports' return. ECF No. 19-2, PageID.171. Thus, a writ of mandamus is not appropriate because Plaintiffs have "other adequate means to attain the relief [they] desire[]." *Allied Chem. Corp.*, 449

15

U.S. at 35. Finally, ICE's decision to return documents is discretionary on a case-by-case basis, which is another reason why a writ of mandamus would be improper here. *See Carson*, 633 F.3d at 491 ("Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary.").

Thus, the Court does not have mandamus jurisdiction as to MDAG or DHS in this case. Accordingly, it cannot compel either agency to do what Plaintiffs request.

### D. Criminal Prosecution

Plaintiffs ask the Court to find the Immigration Court and the officials involved in their immigration case criminally liable. ECF No. 1, PageID.5; ECF No. 21, PageID.185–86. Plaintiffs also suggest that MDAG is complicit in the Immigration Court's "crimes." ECF No. 26, PageID.226. The Court has no power to find any of these persons in violation of the criminal law.

The Sixth Amendment of the United States Constitution provides that all individuals accused of a crime be provided a speedy and public trial before an impartial jury. U.S. Const. amend. VI. Whether a person is accused and prosecuted for a crime "generally rests in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). As such, a court does not have the authority to "launch criminal investigations" or "file criminal charges." *Viola v. Ohio Att'y Gen.*, No. 1:20cv765, 2021 WL 510746, at *28 (N.D. Ohio Feb. 11, 2021). Furthermore, a private individual "lacks a judicially cognizable interest in the prosecution or

nonprosecution of another" and "cannot compel a criminal prosecution of another." *Parker v. Maloney*, No. 1:20-cv-636, 2020 WL 5249072, at *4 (W.D. Mich. Sept. 3, 2020) (quoting *Diamond v. Charles*, 476 U.S. 54, 64 (1986)) (internal quotation marks omitted).

To the extent Plaintiffs request the Court compel the prosecution or investigation of anyone involved in their immigration proceedings or employed by MDAG, they fail to state a claim upon which relief may be granted because they have no cause of action permitting them to demand the criminal prosecution of another. Moreover, to the extent that Plaintiffs request the Court simply to declare any of these individuals in violation of any criminal law, the Court cannot do so unilaterally. Such an act would violate the defendant's Sixth Amendment right to a jury trial.[8]

## IV. CONCLUSION

Accordingly, for the reasons described above, DHS's Motion to Dismiss [ECF No. 19] and MDAG's Motion to Dismiss [ECF No. 22] are **GRANTED**.

**SO ORDERED.**

Dated: December 16, 2024          /s/Gershwin A. Drain
                                  GERSHWIN A. DRAIN
                                  United States District Judge

---

[8] Because the Court has disposed of Plaintiffs' claims on the foregoing bases, it need not reach DHS's argument that it has not waived sovereign immunity and that Plaintiffs' claims are moot. In addition, the Court need not address MDAG's Rule 12(b)(6) argument.

17

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 16, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager